IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **LOPEZ & MEDINA CORP. d/b/a EMMANUEL TRAVEL & TOURS,**<br><br>Plaintiffs,<br><br>v.<br><br>**MARSH USA, INC. d/b/a as MARSH AVIATION,** as agent for certain subscribing and/or participating insurance underwriters for Policies No. AW823101, S1HL1-200A, HL3391396-02, PXLA37000032-01, MMO2326AV501 AND AAV01.440 issued to PATRIOT AIR LLC, for the benefit of PIEDMONT AVIATION SERVICES, Inc. d/b/a PACE AIRLINES; CERTAIN UNDERWRITERS AT LLOYD'S, CERTAIN UNDERWRITERS AT THE INSTITUTE OF LONDON, UNITED STATES AIRCRAFT INSURANCE GROUP, AIG AVIATION, INC. BROCKBANK UNDERWRITING SYNDICATE (U.K.), MUTUAL MARINE OFFICE, AXA EQUITY AND LAW (U.K.), and X,Y,Z INSURANCE COMPANIES,<br><br>Defendants. | **CIVIL NO.**<br><br>**ACTION FOR DECLARATORY JUDGMENT, DIRECT ACTION STATUTE, BREACH OF CONTRACT AND MONEY DAMAGES**<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**

**TO THE HONORABLE COURT:**

      **COMES NOW**, Plaintiff, **LOPEZ & MEDINA CORP. d/b/a EMMANUEL TRAVEL & TOURS,** (hereinafter "L&M" or "Emmanuel Travel"), through its undersigned counsel, and very respectfully, states, alleges and prays as follows:

1

# I.

## JURISDICTION AND PARTIES

1. Plaintiff L&M d/b/a/ as Emmanuel Travel was, at all relevant times alleged in this Complaint, a corporation organized and existing under the laws of Puerto Rico with principal place of business and mailing address, at Suite 1-B, Building 132, F.D. Roosevelt Avenue, Hato Rey, Puerto Rico 00917, which by 2002 had fifteen (15) years experience operating a travel agency, and through various affiliated companies managed by its principal, Heriberto Medina, offered a variety of travel-related services to the general public.

2. Defendant, MARSH USA, INC., d/b/a/ MARSH AVIATION, INC. (hereafter "MARSH"), as agent for certain "Lloyd's Plan insurance underwriters", as said term is defined and/or contemplated under the Puerto Rico Insurance Code, Title 26 Laws of Puerto Rico Annotated (L.P.R.A.), Sec 3501, et seq., and/or for other subscribing insurance insurers on policies issued to PATRIOT AIR LLC, for the benefit of PIEDMONT AVIATION SERVICES, Inc. d/b/a PACE AIRLINES, upon information and belief, is a corporation organized and existing under the laws of New York which at all relevant times alleged in this Complaint had its principal place of business and its mailing address at 1166 Avenue of the Americas, New York, N.Y 10036, and operated as an agent for the referred subscribing insurance underwriters, whose principal places of business are located outside the United States, or in jurisdictions other than the District of Puerto Rico.

3. Co-defendants CERTAIN UNDERWRITERS AT LLOYD'S, CERTAIN UNDERWRITERS AT THE INSTITUTE OF LONDON, UNITED STATES AIRCRAFT INSURANCE GROUP, AIG AVIATION, INC., BROCKBANK UNDERWRITING SYNDICATE (U.K.), MUTUAL MARINE OFFICE and AXA EQUITY AND LAW (U.K.); and unknown insurers designated as "X,Y,Z INSURANCE COMPANIES" (collectively referred to herein as the "Insurance Underwriters"), are upon information and belief, individual, non-incorporated, subscribing insurance underwriters, and/or Lloyd's Plan insurance underwriters, acting through an managing agent and/or a lead underwriter, with joint and several liability, which at all relevant times alleged in this Complaint had a principal place of business outside the United States or in jurisdictions other than the District of Puerto Rico, and had through their agent, co-defendant MARSH, subscribed and issued one or more aviation liability insurance policies with coverage for insured risks related to the charter air travel operations of PATRIOT AIR, LLC.

4. Non-defendant, PATRIOT AIR LLC (hereafter "Patriot Air" or "Patriot"), a Texas LLC with principal place of business at Two Lincoln Centre, 5420 L.B.J. Freeway, Suite 1450, Dallas, Texas, operated as an indirect air carrier to whom the co-defendant insurance underwriters had issued one or more aviation insurance policies, extending Comprehensive Airline Liability Insurance coverage during certain coverage periods and for certain insured risks pertinent to this Complaint, including without limitation, risks associated with Completed Operations Liabilities and Contractual Liabilities of Named Insured Piedmont Aviation Services, Inc. d/b/a/ Pace Airlines, Inc..

5. Patriot Air filed for bankruptcy under Chapter 11 of the United States Bankruptcy Code on September 18, 2002, in Case No. 02-38187-HDH-11 before the U.S. Bankruptcy Court for the Northeastern District of Texas, Dallas Division.

6. Non-defendant, PIEDMONT AVIATION SERVICES, INC. D/B/A/ PACE AIRLINES, INC. (hereafter "Pace Airline"), upon information and belief, a North Carolina corporation with principal place of business at 3800 N. Liberty Street, Winston-Salem N.C., at all relevant times alleged in this Complaint was an FAA 121 Certified Air Carrier, and the Named Insured for whose benefit co-defendant insurance underwriters had issued one or more aviation insurance policies, for coverage periods and Comprehensive Airline Liability Insurance risks pertinent to this Complaint, including without limitation, Pace Airline's operations for and on behalf of Patriot Air.

7. This Honorable Court has subject-matter jurisdiction over the instant controversy pursuant to 28 U.S.C. §1332, insofar as the plaintiff is a resident of Puerto Rico and co-defendants are citizens of countries other than the United States of America, or are citizens of a state other than Puerto Rico, and the amount in controversy exceeds the sum of seventy-five thousand dollars ($75,000.00) exclusive of interest and costs.

8. Venue properly lies in this Honorable Court pursuant to 28 U.S.C. §1391, inasmuch as plaintiff's claims arose in this District; it was in this judicial district where a substantial part of the omissions giving rise to Plaintiff's claims occurred, and a substantial part of the property subject of the action was situated; to wit, it is in this

District where the insured air charter operations originated and/or took place, where the passenger bookings for the charter flights were procured and confirmed, where the aircraft insured under the referred aviation insurance policies was at relevant times situated, and/or managed, and/or operated, and where liability insurance was provided and coverage extended for the insured risks sued upon, based on a certain Passenger Aircraft Charter Agreement.

## II.

## **FACTS COMMON TO ALL CAUSES OF ACTION**

9. In September 2001, non-defendant Pace Airline entered into an Aircraft Charter and Management Agreement (hereafter the "Charter Agreement") with Patriot Air, for Patriot's lease from Pace of a certain Boeing 737-200-15A aircraft which, in exchange for the payment of certain management fees, Pace also agreed to manage and operate as an FAA 121 Certified Air Carrier for Patriot's charter air travel program.

10. As part of Patriot Air's charter air travel program, in late April and beginning of May 2002, principals of Plaintiff L & M and Patriot met through an aircraft broker and negotiated final terms and conditions of a certain Passenger Aircraft Charter Agreement, No. PA01078 (hereafter the "Passenger Agreement"), pursuant to which Patriot Air would operate as an indirect air carrier, and Plaintiff, d/b/a Emmanuel Travel, would act as charterer of pre-scheduled passenger flights on the Boeing 737-200-15A aircraft leased from Pace Airlines by Patriot, configured with one hundred and twenty two (122) economy class seats.

11. Prior to June 1, 2002, the effective date of the first scheduled charter flights under the Passenger Agreement, Patriot Air demanded that Plaintiff provide a Surety Bond, which was issued at a cost of $50,000.00 to Plaintiff Emmanuel Travel by United Surety and Indemnity Company (the "Surety Bond") in the amount of Two Hundred Thousand Dollars ($200,000.00), to guarantee Plaintiff's performance of the Passenger Agreement.

12. The Passenger Agreement further required that Plaintiff Emmanuel Travel, as charterer, make advance deposits in Patriot Air's escrow account, of an amount equal to the scheduled flight hours multiplied by a cost of Four Thousand Nine Hundred Fifty Dollars ($4,950.00) for the applicable period.

13. Plaintiff Emmanuel Travel complied with the referred terms of the Passenger Agreement effecting or making a total of eleven (11) payments to Patriot Air's account from June 18, 2002 to July 18, 2002 in the total amount of Two Hundred Eighty Three Thousand One Hundred Eighty One Dollars ($283,181.00).

14. Although the Passenger Agreement was executed in May 2002, Patriot Air immediately began experiencing difficulties in providing the chartered aircraft for service in Puerto Rico, as agreed, for the use of Plaintiff's booked passengers, failing to provide the aircraft for any charter flights during May 2002 despite the high demand generated by Plaintiff's clients in Puerto Rico as a result of its media campaign.

15. The first charter flight provided by Patriot Air carrying Plaintiff's passengers from Puerto Rico did not take place until June 20, 2002, and it was the only charter flight Patriot Air performed during that entire month.

16. Patriot Air subsequently made the aircraft available performing charter flights for Plaintiff Emmanuel Travel's booked passengers on July 3rd, 4th, 7th, 8th, 11th, 12th, and 14th of 2002.

17. On July 16, 2002, Patriot Air sent by fax a Termination Agreement to Plaintiff Emmanuel Travel in which it attempted to unilaterally terminate the Passenger Agreement.

18. Plaintiff Emmanuel Travel refused to sign the Termination Agreement and sent a letter to Patriot Air's CEO, Mathew Fajack, advising him that it would file a lawsuit should Patriot Air attempt to terminate the Passenger Agreement. Several telephone conversations ensued during which an agreement was reached between the parties that as long as a flight was paid for before it took off, Patriot Air would continue providing the aircraft for Plaintiff's booked charter flights.

19. On July 18, 2002, upon Patriot Air's demand, Plaintiff Emmanuel Travel made two additional wire-transfer of funds to Patriot's bank account in the amounts of $29,000.00 and $25,000.00, respectively, in an effort to maintain the Passenger Agreement in effect under the revised payment terms demanded by Patriot Air, thereby enabling Plaintiff to comply with its own obligations and passenger bookings.

20. In spite of the communications between the principals of Patriot Air and Plaintiff which culminated with the revised arrangement for payment of the charter

flights, and Patriot Air's receipt of the additional payments made by Plaintiff Emmanuel Travel in the total amount of $54,000.00, on or about July 18, 2002, Patriot Air nevertheless unilaterally, and in bad faith, terminated the Passenger Agreement in breach of the terms and conditions agreed to with Plaintiff.

21. Plaintiff Emmanuel Travel had scheduled twenty-two (22) flights for the month of June, 2002, but Patriot Air only flew one (1) flight. As a result of the breach of their agreement, Plaintiff lost revenues for June 2002 that are computed in the following manner: twenty-one (21) flights times 122 passengers, equals 2,562 passengers. The tickets for these passenger flights sold at Two Hundred Fifty Dollars ($250.00) each, equaling Six Hundred Forty Thousand Five Hundred Dollars ($640,500.00) In total lost sales revenues for June 2002.

22. The cost to Plaintiff of the 21 uncompleted passenger flights for June 2002 under the Passenger Agreement is based on 42 flight segments at the agreed price of Four Thousand Nine Hundred Fifty Dollars ($4,950.00) each, for a cost of Two Hundred and Seven Thousand Nine Hundred Dollars ($207,900.00), plus 42 segments at Two Thousand Dollars ($2,000.00) each for taxes and expenses, for an additional cost of Eighty Four Thousand Dollars ($84,000.00), resulting in a total cost to Plaintiff of $291,900.00.

23. The loss of net revenues by Plaintiff Emmanuel Travel because of Patriot Air's breach of the Passenger Agreement for the month of June 2002, is a sum not less than $348,600.00 ($640,500.00 total sales revenues - $291,900.00 total cost).

24. During the month of July 2002, Plaintiff Emmanuel Travel had booked a total of 130 flights, of which only seven (7) were completed by Patriot Air. One hundred twenty-three (123) booked flights were never made due to Patriot Air's breach of the Passenger Agreement, and at a volume of 122 passengers per flight, a total of 15,006 booked passengers did not fly. Each ticket sold at a price of $250.00, resulting in lost sales revenues to Plaintiff for July 2002 in the amount of $3,751,500.00.

25. The cost to Plaintiff under the Passenger Agreement for completing these 123 scheduled charter flights for July 2002 is based on 246 flight segments at a price of $4,950.00 each, for a cost of $1,217,700.00, plus 246 segments at $2,000.00 each, for taxes and other expenses, for an additional cost of $492,000.00, resulting in a total cost to Plaintiff of $1,709,700.00.

26. The loss of net revenues by Plaintiff Emmanuel Travel because of Patriot Air's breach of the Passenger Agreement during July 2002, is a sum not less than $2,041,800.00 ($3,751,500.00. total sales revenues - $1,709,700.00 total cost).

27. In June-July 2002, Plaintiff Emmanuel Travel, incurred additional costs as a result of Patriot Air's failure to provide the chartered aircraft and its breach of the Passenger Agreement, for the issuance of flight tickets, ground transportation and hotel charges, as well as substitute flight tickets with other airlines, to prevent its booked passengers from being stranded. Said additional costs during June-July 2002, are estimated to be a sum not less than $300,000.00.

28. Patriot Air's failure to provide the chartered aircraft and breach of the Passenger Agreement adversely affected Plaintiff Emmanuel Travel's operations whose lost bookings consisted of: for August 2002 a total of 80 charter flights, each consisting of 122 passengers, for a total of 9,760 passengers; for September 2002 a total of 82 charter flights, for a total of 10,004 passengers; for October 2002 a total of 80 charter flights, for a total of 9,760 passengers; for November 2002 a total of 82 charter flights, for a total of 10,004 passengers; and, for December 2002 a total of 130 flights, for a total of 15,860 passengers, who were unable to fly as agreed under the Passenger Agreement.

29. Plaintiff suffered loss of revenues, and other damages due to Patriot Air's breach of the Passenger Agreement, and the cancellation of booked passengers on charter flights that never flew from August through the end of the contract period, December 2002, in a sum estimated to be not less than $10,000,000.00.

**FIRST CAUSE OF ACTION**

30. Plaintiff Emmanuel Travel reiterates and adopts in its First Cause of Action the facts set forth in Paragraphs 1 through 29 of the Complaint.

31. Plaintiff files suit in a Direct Action against the subscribing co-defendant Insurance Underwriters, individually and/or collectively, of those insurance policies identified in this Complaint, or any other policies, issued to PATRIOT AIR LLC, and/or PIEDMONT AVIATION SERVICES, Inc. d/b/a PACE AIRLINES, as operators/charterers of the leased aircraft dedicated to Plaintiff Emmanuel Travel's booked passengers, pursuant to the Puerto Rico Direct Action Statute, Title 26

("Laws of Puerto Rico Annotated") L.P.R.A Sec. 2001 et seq., for the risks insured by them thereunder, including without limitation, the Completed Operations Liabilities and Contractual Liabilities of Patriot Air and Named Insured Piedmont Aviation Services, Inc. d/b/a/ Pace Airlines, Inc..

32. Co-defendant Insurance Underwriters, individually and/or joint and severally, are directly liable, within the maximum limits of their combined policies, to Plaintiff Emmanuel Travel for the financial losses and damages it suffered as a result of the breach of the Passenger Agreement with Patriot Air, and/or for the uncompleted flight operations for Plaintiff's booked passengers, and/or for the breach of the Charter Agreement between Patriot Air and Pace Airline, that resulted in the cancellation and loss of Plaintiff's passenger bookings due to unavailable, cancelled and/or uncompleted charter flights from May through December 2002, which damages are estimated to be a sum not less than $10,000,000.00.

## SECOND CAUSE OF ACTION

33. Plaintiff Emmanuel Travel reiterates and adopts in its Second Cause of Action the facts set forth in Paragraphs 1 through 32 of the Complaint.

34. Plaintiff seeks Declaratory Judgment be entered by this Honorable Court declaring one or more of the insurance policies issued by the Defendant Insurance Underwriters provide, within the terms applicable for commencing Plaintiff's actions for breach of contract, insurance coverage for the insured risks associated with the breach of the Passenger Agreement, the Charter Agreement, and/or any other

agreements related to the charter flight operations of Patriot Air, as indirect air carrier, and Pace Airline, as an FAA 121 Certified Air Carrier from May to December 2002.

35. Plaintiff further seeks Declaratory Judgment be entered by this Honorable Court declaring that co-defendant Insurance Underwriters as "Lloyd's Plan insurance underwriters", as said term is defined and/or contemplated under the Puerto Rico Insurance Code, Title 26 Laws of Puerto Rico Annotated (L.P.R.A.), Sec 3501, et seq., is each by statute jointly and severally liable to indemnify Plaintiff, up to the total limits of coverage in their individual and/or combined policies, for the monetary damages and losses set forth herein suffered by Charterer-Plaintiff, Emmanuel Travel, estimated to be a sum not less than $10,000,000.00.

### THIRD CAUSE OF ACTION

36. Plaintiff Emmanuel Travel reiterates and adopts in its Third Cause of Action the facts set forth in Paragraphs 1 through 35 of the Complaint.

37. Plaintiff Emmanuel Travel suffered monetary damages and other losses as a result of the breach of contract by PATRIOT AIR LLC as indirect air carrier, and/or PIEDMONT AVIATION SERVICES, Inc. d/b/a PACE AIRLINES, as manager/operator of the leased aircraft dedicated to Plaintiff Emmanuel Travel's booked passengers from May to December 2002.

38. The aforesaid breach of contract is a covered insurable risk under one or more of the insurance policies issued by the Defendant Insurance Underwriters, and as such, said co-defendant Insurance Underwriters are each joint and severally liable to Plaintiff for said breach of contract by insureds Patriot and/or Pace, and for

indemnification of all the monetary and other damages resulting from said breach estimated to be a sum not less than $10,000.000.00.

**WHEREFORE**, and pursuant to the Puerto Rico Direct Action Statute, Rule 57 F.R.Civ.P., Title 26 Laws of Puerto Rico Annotated (L.P.R.A.), Sec 3501, et seq., and the foregoing three Causes of Action, it is respectfully requested that this Honorable Court:

1. Enter Declaratory Judgment for Plaintiff, Lopez & Medina Corp. d/b/a Emmanuel Travel & Tours, declaring that one or more of the insurance policies issued by co-defendant Insurance Underwriters provides coverage for the insurable risks sued hereunder, further finding each of said defendants to be statutorily liable, joint and severally, under the Insurance Code of Puerto Rico, and order them to indemnify the total damages and losses suffered by Plaintiff, as a result of the breach of the Passenger Agreement and/or the Charter Agreement, and/or any other agreement, by their insureds, Patriot Air and/or Pace Airline, in a sum not less than $10,000,000.00, with interest, costs, and reasonable attorney's fees; and, concurrently or alternatively,

2. Enter Judgment for Plaintiff, Lopez & Medina Corp. d/b/a Emmanuel Travel & Tours, and against the co-defendant Insurance Underwriters, granting Plaintiff its monetary damages and losses claimed herein in breach of contract, to be proven at a trial demanded before a jury, in a sum not less than $10,000,000.00, with interest, costs, and reasonable attorney's fees, granting any other and further remedy it deems appropriate.

COUNSEL FOR PLAINTIFF
***FERNANDO D. CASTRO LAW OFFICES***
El Caribe Building, Suite 1401
53 Palmeras Street
San Juan, Puerto Rico, 00901-2417
Tel: (787) 406-9039, 725-3312
Fax: (787) 781-1028, 723-7233
E-mail: fcastrolaw@hotmail.com
       castro@bandulaw.com

_____
*Signed/* Fernando D. Castro
    USDC No. 201414

COUNSEL FOR PLAINTIFF
***FERNANDO D. CASTRO LAW OFFICES***
El Caribe Building, Suite 1401
53 Palmeras Street
San Juan, Puerto Rico, 00901-2417
Tel: (787) 406-9039, 725-3312
Fax: (787) 781-1028, 723-7233
E-mail: fcastrolaw@hotmail.com